## CHICAGO GREAT WESTERN R. CO. v. DAVIS.

(District Court, N. D. Iowa, Cedar Rapids Division. Oct. 4, 1924.)

### No. 172.

1. **Carriers ⊜84—Storage of freight; "place of delivery" means unloading platform or other place customarily used for delivery.**

Under the provision of a uniform bill of lading that, if property is not removed by the consignee within 48 hours after notice, it may be kept in the car depot or "place of delivery" of the carrier, or warehouse, subject to a reasonable charge for storage," or removed and stored in a public warehouse, the "place of delivery" meant is either the unloading platform or some other place customarily used for the delivery of freight, and calculated, by reason of its character, location, supervision, or care to afford protection against the usual hazards to unstored or unguarded property.

2. **Carriers ⊜191—Unless property is properly cared for, storage may not be charged.**

Where a shipment of steel posts carried by a railroad under a uniform bill of lading, which were not taken away by the consignee, were removed by the railroad company from the unloading platform and piled on the open right of way, near a public road, from which place a large number of the posts were stolen, the company *held* not entitled to charge storage.

3. **Carriers ⊜91—Consignee permitting property to be left by carrier unguarded and to be sold for storage charges may not recover for conversion.**

The consignee of a shipment of steel posts, who did not remove them from the station of delivery, and who had full knowledge that they were left by the railroad company exposed and unprotected, and after some had been stolen permitted the company to sell the remainder for storage charges without objection, *held* not entitled to recover for their conversion.

At law. Action by the Chicago Great Western Railroad Company against T. J. Davis. Trial to court, and judgment dismissing petition and counterclaim.

Carr, Cox, Evans & Riley, all of Des Moines, Iowa, for plaintiff.

Johnson, Donnelly & Lynch, all of Cedar Rapids, Iowa, for defendant.

SCOTT, District Judge. An action at law by the Chicago Great Western Railroad Company against T. J. Davis to recover $471.88 for storage of 34 bundles of steel fence posts. Plaintiff in substance alleges that about October 1, 1920, there was consigned by Harris Bros., Chicago, Ill., to defendant T. J. Davis at Aurora, Iowa, 500 fence posts, weighing 7,000 pounds, which were transported by the defendant and delivered to the plaintiff on the 6th day of October, 1920; that in compliance with an Act of Congress approved February 4, 1887 (Comp. St. § 8563 et seq.), entitled "An Act to Regulate Commerce," and amendments

thereto, plaintiff had filed with the Interstate Commerce Commission of the United States, schedules showing rates, fares and charges for transportation and storage on the various classifications of freight; that said shipment of posts was not removed by the defendant, but was stored on the property of the plaintiff; that storage charges accrued thereon at the rate of 2 cents per day per hundred pounds for the first five days, and 3 cents per day per 100 pounds for each day thereafter, in accordance with the tariff schedule referred to; that on June 30, 1921, said shipment was sold for charges for the sum of $112, under certain sections of the Code of Iowa relating to sale of stored property, after due notice to the defendant; that the expense attendant on said sale was $14.29, leaving a balance of $97.71, which was applied on said storage charges, leaving an unpaid balance of $471.88.

The defendant, answering, admits the shipment of posts and the acceptance of the shipment, but denies that said posts were ever stored on the property or by the plaintiff, and denies that the plaintiff sold the same for just charges thereon, and denies the right of the plaintiff to sell the same. Defendant, further answering, alleges that a short time after the posts arrived defendant paid plaintiff the full amount of the transportation charges in the sum of $30.64; that said posts were not properly stored or housed or cared for by the plaintiff, and before the same were delivered a large number were lost, destroyed, or carried away by persons who had no right thereto, all due to the carelessness and negligence of the plaintiff, and that the portion remaining were taken possession of for the purpose of sale as alleged in its petition; that instead of properly storing the posts plaintiff carelessly and negligently threw them out near a public highway along its right of way at some distance from its depot grounds and yards, and about 100 thereof missing from the shipment; that, if plaintiff ever had a right to sell said posts, it failed to do so within a reasonable time, and waited until long after the claimed charges had equaled the value of the property, together with all transportation charges; that the original cost of the posts was $150, and the reasonable value thereof at Aurora, Iowa, was $180.

Defendant in a separate count, by way of counterclaim, adopts its foregoing statements and alleges that said shipment of posts, consisting of 500, reasonably worth 40 cents apiece, were appropriated by the plaintiff by reason of its attempting to sell the same

without having any just charge against the same; that said posts were never stored or cared for by the plaintiff, and that a large portion of said posts were stolen or lost, and the balance appropriated by the plaintiff without legal right; and defendant prays for damages in the sum of $200.

The plaintiff, replying to defendant's answer and counterclaim, denies all of the allegations thereof, not mere admissions of the allegations of plaintiff's petition, admits the payment of the freight, and in substance alleges that the defendant was thereupon free to remove the said posts, and that defendant neglected and refused to do so, and that the same remained on the plaintiff's premises. Plaintiff specifically alleges that said posts were properly and carefully stored in accordance with the tariff regulations.

The parties, by stipulation in writing, waived a jury trial, and consented to a trial to the court. There was no substantial conflict in the evidence introduced on the trial. That evidence shows that, about the 1st of October, 1920, Harris Bros., Chicago, consigned to the defendant, Davis, at Aurora, Iowa, under uniform bill of lading applicable in official and Western classification territories, effective January 1, 1916, 500 steel fence posts, in 34 bundles, of aggregate weight 7,000 pounds, of the value of $150, and that said shipment arrived some time before the 6th of October, 1920; that the carrier notified the consignee, who appeared on the 6th of October and paid the freight; that the bundles of posts up to that time, or about that time, lay upon the station platform; that defendant thereupon notified the tenant on his farm, where the posts were to be used, some miles in the country, to go and take the posts away; that defendant was a nonresident of the town of Aurora, and resided at Marion, Iowa; that defendant's agent did not go for the posts or take them away; that about two weeks later the station agent notified defendant that the posts were still there, and defendant explained to the agent that because of road conditions the tenant could not come in at once, and the agent assured him that that would be all right—that the posts were not in his way; that, a short time after the posts arrived and were unloaded on the platform, section men removed the posts, carried them farther on the depot grounds, and piled them; that a loading platform extends along in front of the station in an east and west direction, and to a point 50 feet west of the end of the station; that the posts were piled about 15 feet beyond the end of the platform and

about 12 feet to the south in a way not to interfere with the use of platform or teams driving along the same; that the depot grounds are not inclosed in any way, and a public street runs up to the depot grounds on the south and abuts against the same a short distance southwest of the point where the posts were piled; the street again continues north at the north side of the track, although there is no crossing at that point, and the teams do not cross the track at this point; that teams, automobiles, and conveyances and the public at large, however, enter the depot grounds and right of way over the street from the south, and there is nothing to indicate or mark the line where the street is terminated and the right of way begins; that defendant's tenant never came or took the posts away, and they remained, such of them as were not carried away, on the right of way or depot grounds continuously thereafter until sold; that about the month of December, 1920, defendant learned that the posts had not been taken away, and the railroad's agent advised him that an inspector had been around and advised that storage charges would have to be collected on the posts; that such charges then nearly equaled the value of the posts.

What further talk was had in this connection does not appear, but on December 22, 1920, the agent wrote defendant a letter, in which he says: "In regard to shipment of fence posts, I am notified by our freight claim agent that we cannot waive the storage charge but they will have to stand. Therefore I cannot do anything about having them removed from our right of way and stored, as we talked about when you were here, until storage has been settled." Defendant thereupon told the agent that he would not pay the storage charges, that the posts were not of sufficient value, and that he might sell them for the charges. Nothing further occurred until June 30, 1921, when plaintiff, after notice in conformity with the statute in Iowa relative to sale of stored property for charges, sold the posts for $112, and paid therefrom expenses in the sum of $14.29, and applied the balance of $97.71 on the charges which at that time had accrued in the sum of $553, leaving a balance of $455.29, plus war tax at the rate of 3 per cent. in the amount of $16.59, or a total of $471.88 unpaid, for which this action is brought.

The defendant was present on the day of the sale and ascertained that the bundles of posts had been broken open and seventy five carried away. The testimony shows that the posts were wired together in piles of about 14 or 15 each and that they could be stored in a space of about 74 cubic feet. That is a space 7 feet square and 18 inches high, or a space 7 feet long, 3½ feet wide, and 3 feet high. It does not appear from the evidence that the railroad company, either in the placing of the posts or in any other manner, took any precautions for their preservation or protection. The posts were at all times accessible to the public in a small town and near a public street, and upon ground used generally by the public.

[1] The question is whether in these circumstances the Railroad Company is entitled to storage charges, and, if so, whether it would be entitled thereto after December, 1920, when Davis notified the agent that he would not pay the charges and that he might sell the posts. The uniform bill of lading, under which the goods were shipped, contains the following:

"Sec. 5. Property not removed by the party entitled to receive it within 48 hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given, may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage.

"The carrier may make a reasonable charge for the detention of any vessel or car, or for the use of tracks after the car has been held 48 hours (exclusive of legal holidays), for loading or unloading, and may add such charge to all other charges hereunder and hold such property subject to a lien therefor. Nothing in this section shall be construed as lessening the time allowed by law or as setting aside any local rule affecting car service or storage."

"Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at the owner's risk until the cars are attached to and after they are detached from trains."

The uniform bill of lading together with the tariffs material in the case constitute the

contract of shipment between the parties. Michigan Central Railroad Co. v. Mark Owen & Co., 256 U. S. 427, 430, 41 Sup. Ct. 554, 65 L. Ed. 1032. The contract therefore provides—and it may be conceded that the railroad company may not deviate from the uniform terms of its bill—that "property not removed by the party entitled to receive it within 48 hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given, may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse," etc. The controversial question is: What does the language of the contract, "place of delivery," mean, as used in the uniform bill of lading? The posts were not kept in a car, depot, or warehouse. Therefore, unless they were kept in the "place of delivery" of the carrier, so as to be "subject to a reasonable charge for storage," then no storage charge could be made. Now it seems to me that this contract clearly contemplates mutual obligations; that it contemplates the storage of the freight in question by the railroad company, as well as the payment of the storage charges by the shipper or consignee. Warehouse service or storage is valuable, because calculated to preserve and protect the article stored against hazard. I think "place of delivery" in a uniform bill means either the unloading platform or some other place customarily used for the delivery of freight, and calculated either by reason of its character, location, supervision, or care to afford protection against the usual hazards to unstored or unguarded property.

[2] The posts in question were not placed or stored in a depot warehouse or other inclosure. They were not guarded or kept under any supervision. They were not even permitted to remain on the station platform, but, on the contrary, were removed and placed upon the open right of way near a public street at a place accessible to any person who might desire to lay hold of them. They were, in short, exposed to every hazard against which storage is intended to guard; and it is for this service that it is contended the contract and the law guarantees a charge for storage. I cannot accede to this contention. I am constrained to the conclusion that the language of the uniform bill of lading, "reasonable charge for storage," implies that storage is some degree within reason has been supplied. I do not think that the posts in question were in this case given storage within the contemplation of the uniform bill of lading, and, the freight having been paid, I find that plaintiff was not entitled to recover from the defendant under the pleadings in this case.

[3] We now come to consider the defendant's counterclaim. In this connection the evidence clearly shows that while the plaintiff was negligent the defendant and his agent were equally negligent, and that the defendant had full knowledge that the posts were not stored, guarded, or protected in any way. I think in these circumstances the defendant permitted the posts to remain where the section men placed them at his own risk. All of the posts were not carried away, however. The undisputed evidence shows that 425 of them were sold by the railroad company, and $97.71 collected in excess of expenses of sale. The sale, however, was made with the defendant's knowledge and without any protest upon his part. Indeed, it is clear from the testimony that he consented to the sale with the full intention to abandon all claim to or on account of the posts. In the circumstances, I do not think the defendant can enforce a cause of action for the wrongful appropriation of the posts.

The plaintiff's petition and the defendant's counterclaim should both be dismissed, the costs of the case, however, to be taxed to the plaintiff; and it is so ordered.